**IN THE UNITED STATES BANKRUPTCY COURT FOR THE**
**EASTERN DISTRICT OF TENNESSEE**

In re

Case No.  14-30773

CAROL SUE WOOLMAN
fka CAROL PICCO

Debtor

**MEMORANDUM ON**
**CONFIRMATION OF CHAPTER 13 PLAN**

**APPEARANCES:**     MAYER & NEWTON
                John P. Newton, Jr., Esq.
                1111 Northshore Drive
                Suite S-570
                Knoxville, Tennessee  37919
                Attorneys for Debtor

                GENTRY, TIPTON & MCLEMORE, P.C.
                Maurice K. Guinn, Esq.
                Post Office Box 1990
                Knoxville, Tennessee  37901
                Attorneys for John A. LaFollette, Sr.

                GWENDOLYN M. KERNEY, ESQ.
                Post Office Box 228
                Knoxville, Tennessee  37901
                Chapter 13 Trustee

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

Before the court for confirmation is the Chapter 13 Plan filed by the Debtor on March 12, 2014. John A. LaFollette, Sr. and the Chapter 13 Trustee, Gwendolyn M. Kerney, filed, respectively, an Objection to Confirmation of Chapter 13 Plan and Chapter 13 Trustee Objection to Confirmation on April 17, 2014.  Pursuant to the Joint Statement of Issues filed on June 27, 2014, the issues before the court are (1) feasibility; (2) valuation of real property; (3) adequate protection; (4) impermissible modification of Mr. LaFollette's interest in the Debtor's residence; (5) whether the plan cures the mortgage default within a reasonable time; (6) the correct amount of the maintenance payment; and (7) the correct amount of the arrearage claim.

An evidentiary hearing was held on July 23, 2014.  The record before the court consists of sixteen exhibits and the testimony of five witnesses, Edward Rowling, Jr., Carol Elizabeth Cimbolo, Marty Ray Fawver, Mr. LaFollette, and the Debtor.[1]

This is a core proceeding.  28 U.S.C. § 157(b)(2)(L) (2006).

# I

The Debtor filed the Voluntary Petition commencing her Chapter 13 bankruptcy case on March 12, 2014.  Contemporaneously with the filing of her petition, the Debtor filed statements and schedules, including Schedule A, reflecting her ownership of real property valued at $20,000.00 and described as "1.10 acres on 316 Doc Norton Road, Walland, TN . . . which has a 1997 Oakwood Singlewide Mobile Home and storage building sitting on Property" (Doc Norton Road Property), and

---

[1] The Chapter 13 Trustee, while not waiving her objection, did not participate in the trial, stating that her sole objection was feasibility, which would be determined by the outcome of the Objection to Confirmation filed by Mr. LaFollette.  Accordingly, all references within this Memorandum to "Objection to Confirmation" will refer only to Mr. LaFollette's objection.

Schedule D, reflecting a mortgage obligation on the Doc Norton Road Property securing a claim of John A. LaFollette, Sr. in the amount of $33,338.00. COLL. TRIAL EX. 1. The Debtor also filed a Chapter 13 plan that proposes weekly payments of $126.00 for 60 months, remittance of tax refunds over $500.00, and a 6-20% dividend to unsecured creditors. TRIAL EX. 15. The plan provides for payment to Mr. LaFollette of the mortgage obligation encumbering the Doc Norton Road Property with ongoing monthly maintenance payments of $215.82 and satisfaction of an arrearage in the amount of $2,800.00 to be cured through monthly payments of $60.00. TRIAL EX. 15. The mortgage obligation is established through a Deed of Trust recorded with the Blount County Register of Deeds on August 7, 2007, whereby the Debtor conveyed the Doc Norton Road Property to Chris Ralls, Trustee, pursuant to the following material terms:

> But This Conveyance Is Made In Trust, however, to secure the payment of the principal sum of Nineteen Thousand Six Hundred Dollars ($19,600.00), evidenced by a promissory note of even date herewith,[2] the terms of which are incorporated herein by reference, signed by CAROL S. WOOLMAN, SINGLE, payable to the order of JOHN A. LAFOLLETTE, SR., WIDOWER, payable as follows:
>
> > $19,600.00 payable over 20 years at 12% interest, at $215.82 per month, the first payment being due the 1st day of August, 2007, and a like day each month thereafter until paid in full.

TRIAL EX. 6.

On May 13, 2014, Mr. LaFollette filed a proof of claim in the amount of $40,184.54, claiming $25,000.00 as secured and $15,184.54 as unsecured. TRIAL EX. 17. The breakdown of the $40,184.54 figure includes principal of $33,000.13, interest in the amount of $4,684.41 from January 18, 2013 through March 12, 2014, and attorneys' fees in the amount of $2,500.00. TRIAL EX. 17. The proof of claim also sets forth an arrearage in the amount of $8,100.00, representing

---

[2] It is undisputed that the Debtor did not execute a promissory note.

3

fourteen payments of $400.00 each plus the $2,500.00 attorneys' fee. TRIAL EX. 17. The Debtor

filed the Objection by Debtor to the Claim of John A. LaFollette, Sr. (Objection to Claim) on June 9,

2014, objecting to the amount of Mr. LaFollette's claim, to which Mr. LaFollette filed his Response

to Objection by Debtor to the Claim of John A. LaFollette, Sr. on July 9, 2014.[3]

## II

Confirmation of a Chapter 13 plan is governed primarily by 11 U.S.C. § 1325(a) including,

as material to this contested matter, the requirement that "the debtor will be able to make all

payments under the plan and to comply with the plan[.]" 11 U.S.C. § 1325(a)(6) (2006). Feasibility

requires the Debtor to demonstrate to the court's satisfaction that after taking all circumstances into

consideration, there is a reasonable likelihood that she will make all plan payments. In this case,

feasibility of the Debtor's plan hinges on whether the proposed payment to Mr. LaFollette is the

correct monthly maintenance payment. If the proposed $215.82 and the proposed $60.00 to cure the

arrearage are incorrect, the Chapter 13 Trustee agrees with Mr. LaFollette that the Chapter 13 Plan

proposed on March 12, 2014, is not feasible.

In his objection, Mr. LaFollette raises the issue of improper modification of the Debtor's

mortgage obligation to him. Pursuant to 11 U.S.C. § 1322(b)(2) (2006), debtors are generally

prohibited from modifying the rights of a mortgage holder. The court may, however, confirm a plan

under which the debtor will either cure or waive all defaults and complete contract payments during

the life of the plan pursuant to § 1322(b)(3) (2006) or will cure all defaults within a reasonable time

and make maintenance payments to continue after the duration of the plan pursuant to § 1322(b)(5)

---

[3] The hearing on the Objection to Claim is set for August 20, 2014.

(2006).  Specifically, § 1322(b)(2) provides that a plan "may . . . modify the rights of holders of

secured claims, other than a claim *secured only by* a security interest in real property that is the

debtor's principal residence[.]"  11 U.S.C. § 1322(b)(2) (emphasis added).  Mr. LaFollette argues

that the Debtor is attempting to "cramdown" his mortgage claim pursuant to the Deed of Trust,

stating that the maintenance payment is $400.00 monthly, but the Debtor is proposing to pay only

$215.82, which was the original maintenance payment prior to an unwritten modification that they

agreed to in 2010.  He also argues that the arrearage is $8,100.00, which would require $135.00

monthly, not the proposed cure payment of $60.00 towards an arrearage of $2,800.00 stated in the

plan.  Conversely, the Debtor denies that there was any modification agreement and states that her

maintenance payment is $215.82 as shown in the Deed of Trust.

On the record before it, the court finds that there is no attempted modification of

Mr. LaFollette's rights granted under the Deed of Trust.  As an initial matter, Mr. LaFollette asserts

a claim against the mobile home in which the Debtor resides, although the Debtor denies that she

purchased it from him.  The only testimony before the court establishes that the mobile home has

an unattached deck, retains its axles, and is not affixed to the Doc Norton Road Property.  Therefore,

if Mr. LaFollette is correct and his claim is secured by the mobile home as well as the Doc Norton

Road Property, his claim does not fall within the scope of § 1322(b)(2)'s anti-modification language

because it is the mobile home that is the Debtor's principal residence and not the real property.  *See*

*Davis v. Green Tree Servicing, LLC (In re Davis)*, 386 B.R. 182, 186 (B.A.P. 6th Cir. 2008) (" The

requirements of the anti-modification provision are found in the plain language of § 1322(b)(2):

(1) that the property is real property, (2) that the real property is the debtor's personal residence, and

(3) that there is no additional collateral.").  Nevertheless, the Debtor denied that there was a

5

modification of the original agreement reflected in the Deed of Trust, testifying that she lives in the mobile home but does not own it and is not purchasing it from Mr. LaFollette. This assertion is supported by the Certificate of Title, which was issued on July 15, 2013, establishing that the mobile home is titled in Mr. LaFollette's name. TRIAL EX. 8. Taking this document together with the Debtor's testimony, the court finds that the mobile home is not security for Mr. LaFollette's claim,[4] in which case, § 1322(b)(2) does not apply, and the Debtor's obligation under the Deed of Trust is not subject to the anti-modification provisions of § 1322(b)(2).

The parties do not dispute that there is no documentation of a payment agreement between the Debtor and Mr. LaFollette other than the Deed of Trust which requires a monthly payment of $215.82 over twenty years together with 12% interest.[5] This payment amount is the amount proposed by the Debtor in her Chapter 13 Plan. The court will confirm the Debtor's Chapter 13 Plan with that maintenance payment because the Deed of Trust is the only credible proof before the court of the parties' agreement. As for the arrearage, the record reflects that the Debtor has not made a payment to Mr. LaFollette since December 2012, making her fourteen months behind as of the March 2014 petition date. Multiplying $215.82 by fourteen yields an arrearage of $3,021.48, which, together with the $2,500.00 attorney fee, totals $5,521.48, representing the amount that must be cured over the life of the plan. This arrearage cannot be cured by the $60.00 monthly payment proposed under the Debtor's plan but will require a monthly arrearage payment of $92.04. Because the arrearage amount proposed by the Debtor is inadequate, her plan must be modified to

---

[4] In addition to the fact that the mobile home is not affixed to the real estate, no security agreement was introduced into evidence establishing the grant of a security interest to Mr. LaFollette.

[5] Pursuant to 11 U.S.C. § 1322(b)(5), the plan provides "for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any . . . secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]"

accommodate the $92.04 payment required together with the long term $215.82 maintenance payment.  As hereinafter discussed, the Debtor's Chapter 13 Plan proposed on March 12, 2014, appears to meet the feasibility requirement of 11 U.S.C. § 1325(a)(6) (2006).[6]

With respect to the value of the Doc Norton Road Property, the Debtor claims in her statements and schedules that the value is $20,000.00, while Mr. LaFollette claims the value is $25,000.00.  Neither figure is supported by an appraisal.  The only documentary evidence reflecting the value of the Doc Norton Road Property is the Warranty Deed executed on August 7, 2007, whereby Mr. LaFollette conveyed the Doc Norton Road Property to the Debtor, which contains a certification that "the actual consideration for the transfer or value of the property transferred. [sic] Whichever is greater is $19,600 which amount to equal to or greater than the amount which property transferred would command at a fair voluntary sale." TRIAL EX. 5.  This certification, together with the Debtor's representation in Schedules A and D to her petition filed on March 12, 2014, valuing the Doc Norton Road Property at $20,000.00, supports a value of $19,600.00.  Based upon these documents, the court finds the value of the Doc Norton Road Property to be $19,600.00, and Mr. LaFollette's claim is secured to that extent.  The claim itself has also been challenged by the Debtor, who argues that she only owes $3,000.00; however, based upon the record before the court, that issue may also be resolved notwithstanding that the records of both the Debtor and Mr. LaFollette are severely lacking and cannot substantiate either her contention that she owes $3,000.00 or his contention that she owes $40,184.54.

---

[6] According to the court's calculation, the dividend to nonpriority unsecured creditors should approximate 19%.

"The doctrine of judicial estoppel 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010) (quoting *New Hampshire v. Maine*, 832 U.S. 742, 749, 121 S. Ct. 1808, 149 L.Ed.2d 968 (2001)); *see also Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002) ("[T]he doctrine of judicial estoppel is utilized in order to preserve 'the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.'") (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)).

> In the bankruptcy context, this court has previously noted that "judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" *Browning*, 283 F.3d at 775-76 (citation omitted). Furthermore *Browning* noted that, "judicial estoppel is inappropriate in cases of conduct amounting to nothing more than mistake or inadvertence." *Id.* at 776; *see also New Hampshire*, 532 U.S. at 753, 121 S. Ct. 1808. Two circumstances in which a debtor's failure to disclose might be deemed inadvertent are: (1) "where the debtor lacks knowledge of the factual basis of the undisclosed claims," and (2) where "the debtor has no motive for concealment." *Browning*, 283 F.3d at 776 (finding that the debtor there had, "no motive for concealment in light of its role as a debtor-in-possession, having all the rights and duties of a trustee").

*White*, 617 F.3d at 476.

In this case, the Debtor's statements and schedules, signed under penalty of perjury, listed Mr. LaFollette's claim in the amount of $33,338.13 and did not designate the claim as contingent, unliquidated, or disputed. During the confirmation hearing, the Debtor testified that she listed that claim amount based upon the proof of claim that Mr. LaFollette filed in her prior bankruptcy case

in the identical amount.[7] *See* TRIAL EX. 18.  The Debtor, therefore, knew, as early as July 31, 2013,

the date Mr. LaFollette's claim was filed in her prior case, that he was asserting a secured claim in

the amount of $25,000.00 and an unsecured claim in the amount of $8,338.13, and any issues that

those amounts were incorrect were known to her at that time and could have been acknowledged

when she filed this bankruptcy case by, at the very least, designating the claim as disputed in her

Schedule D.  Accordingly, the court finds that the amount of Mr. LaFollette's claim is $33,338.13,

which includes the $2,500.00 attorneys' fee allowable under the Deed of Trust.  The claim is secured

to the extent of $19,600.00 and is unsecured in the amount of $13,738.13.[8]

In summary, the court finds that Mr. LaFollette holds a claim in the amount of $33,338.13,

of which $19,600.00 is secured and $13,738.13 is unsecured.[9]  The ongoing monthly mortgage

obligation owed to Mr. LaFollette is $215.82.  The Debtor's Chapter 13 Plan, proposed on March 12,

2014, must be amended to reflect an arrearage owed to Mr. LaFollette in the amount of $5,521.48

to be paid over the life of the plan at $92.04 monthly.  Once the Debtor amends her plan, the

---

[7] The Debtor testified and the court takes judicial notice, pursuant to Rule 201 of the Federal Rules of Evidence, that the Debtor filed case #13-31119 on March 22, 2013, which was dismissed at the Debtor's request on January 16, 2014.

[8] This finding also serves to resolve the Objection to Claim filed on June 9, 2014, and the hearing scheduled for August 20, 2014, will be stricken from the docket.

[9] The propriety of bifurcating Mr. LaFollette's claim into its secured and unsecured components to allow payment under § 1322(b)(5) of only the secured component rather than the claim in its entirety is not at issue for the following reasons:  (1) Mr. LaFollette, in filing his proof of claim on May 12, 2014, as amended on May 13, 2014, himself bifurcated his claim as secured to the extent of $25,000.00 and unsecured to the extent of $15,184.54; and (2) his only argument has been that the maintenance payment on the secured portion of his claim should be $400.00 rather than the $215.82 called for under the plan and Deed of Trust.  *See In re Martin*, 444 B.R. 538, 543 (Bankr. M.D.N.C. 2011) ("Together, sections 1322(b)(2) and 1322(b)(5) allow a debtor to bifurcate a 'secured creditor's claim into secured and unsecured portions if the amount of the claim exceeds the value of the collateral securing the claim.'  This bifurcation, however, cannot occur if the secured creditor's claim is secured only by real property that is the debtor's principal residence.") (quoting *In re Bradsher*, 427 B.R. 386, 388 (Bankr. M.D.N.C. 2010)); *contra, In re Bullard*, 475 B.R. 304, 314 (Bankr. D. Mass. 2012) (holding that the anti-modification provision of § 1322(b)(2) and cure and maintenance provision of § 1322(b)(5) are "mutually exclusive" and that the debtor's "hybrid" plan could not be confirmed over the creditor's objection).

Chapter 13 Trustee shall submit the necessary documents for confirmation.  The objections to confirmation filed by Mr. LaFollette and the Chapter 13 Trustee will be overruled and confirmation of the Debtor's Chapter 13 Plan filed on March 12, 2014, will, with the required amendment, be confirmed.

An Order consistent with this Memorandum will be entered.

FILED:  July 30, 2014

BY THE COURT

*/s/  RICHARD STAIR, JR.*

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE